UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**JEFFERY PAUL WILSON**, and<br>**SHONI LEE CARD**,<br><br>Debtors.<br><br>**WILSON SCOTCH MOUNTAIN ANGUS, LLC,**<br><br>Debtor. | Case No. **05-65161-12**<br><br><br><br>Case No. **06-60369-12** |

## MEMORANDUM OF DECISION

At Butte in said District this 13th day of March, 2007.

On December 21, 2006, Debtor Wilson Scotch Mountain Angus, LLC ("Wilson Scotch"), through its attorney, Gary S. Deschenes ("Deschenes"), of Great Falls, Montana, filed an objection to the seconded amended proof of claim no. 1-3, filed on December 13, 2006, by Paul E. Harper Revocable Trust ("Harper Trust") in Debtor's case. Harper Trust, through its attorney, Harold V. Dye ("Dye"), filed a response on January 2, 2007, and requested a hearing for February 8, 2007, in Missoula. Prior to the hearing Debtor requested the Court to take judicial notice of "Valley Bank's Statement of Estimated Post-petition Attorneys Fees and Costs filed on September 29, 2006, Docket number 129, Estimated Fees and Expenses for Counsel filed by Missoula Federal Credit Union on September 29, 2006, Docket number 130, and Ag Sales Estimate of Fees and Costs filed on October 3, 2006, Docket number 131." The Court granted in part and denied in part Debtor's request for judicial notice by noting that it would judicially

1

notice that such fee statements were filed and would consider at the time of hearing any additional request for judicial notice as to any evidentiary or judicial findings involving such fees statements. Except for taking judicial notice that such fee statements were filed, the Court will not take any further judicial notice of such statements as no witnesses testified concerning the charges contained in such statements. The Court conducted the hearing on February 8, 2007. The parties and their attorneys were present. Deschenes call Dye as a witness. Debtor's Exhibit 1[1] was admitted and Harper Trust's Exhibit ("Ex.") 1 was admitted. Dye call Jon R. Binney ("Binney") as an expert witness. At the Court's request, Dye filed on February 23, 2007, a revised fee statement, breaking out any "lumped time" exceeding one hour contained in Harper Trust's Ex. 1. The matter is ready for a decision. This memorandum contains the Court's findings of fact and conclusions of law.

In the addendum to the second amendment to proof of claim 1 ["1-3"], Harper Trust states that "attorneys fees and costs to 5/24/2006" amount to $11,849.27. Wilson Scotch objects on the basis that no accounting of the fees and costs have been submitted to Wilson Scotch or its attorney. Wilson Scotch further objects by stating,

> Without an accounting, Debtors can only suspect that these fees were incurred during the individuals' bankruptcy in which Harper Trust was only a creditor by the guaranty of the individuals. In fact, prior to February, 2006, there had not even been a default under the Contract for Deed and no attorneys fees should have been incurred. Any attorneys fees incurred between February and May in the

---

[1] Debtor's Exhibit 1 is an itemization of fees and costs incurred by Harper Trust for Dye's services that Dye submitted to Deschenes for review. However, by the testimony of Dye and Binney, Dye informed the Court that Debtor's Exhibit 1 contained billing information for unrelated cases. Consequently, the Court with verification from Dye and Deschenes informed the parties that it would consider Harper Trust's Exhibit 1 as the more accurate exhibit and the exhibit that would be used for purposes of determining the fees that would be allowed in this contested matter.

2

individuals' bankruptcy would not be appropriate reasonable attorneys fees due to the frivolous filings of Harper Trust and the unnecessary expenses incurred by Harper Trust.

Harper Trust responds as follows:

1. There is no legal requirement that a secured creditor provide "an accounting" of fees and costs claimed as part of the proof of claim itself. Debtors could have obtained such an "accounting" through Rule 2004 process or simply by requesting one but have not done so.

2. Wilson and Card made the contention that they were "merely guarantors of the debt to Harper Trust" and apparently had lesser liability than Wilson Scotch in their objection to proof of claim dated October 30, 2006 which was objection was settled by the open-court stipulation entered on December 7, 2006 and are barred by the settlement from once again raising this contention in the present objection.

3. Further, "claim" is statutorily defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5). Thus, there is no legal distinction between the liability of a guarantor and the primary obligor for bankruptcy purposes.

4. Debtor's contention that "no attorneys fees should have been incurred" prior to the filing of the Wilson Scotch case overlooks the facts that Wilson and Card filed schedules which falsely stated that they personally owned the real property which was being purchased from Harper Trust by Wilson Scotch and that the Harper Trust was their personal secured creditor and a plan which proposed to pay Harper Trust over 30 years at 5.5 percent interest.

Jeffery Paul Wilson and Shoni Lee Card ("Wilson/Card") filed a chapter 13 case on October 15, 2005. On Schedule A of Debtors' Schedules, they listed the property purchased by Wilson Scotch and listed Harper Trust as a secured creditor. Dye testified that the contract for deed was between Harper Trust and Wilson Scotch, and apparently a guarantee from Jeffery Paul Wilson and Shoni Lee Card was provided by them to the Harper Trust. Neither the contract for deed or the guaranty have been offered or admitted in this contested matter; however Dye did testify as to the terms of the contract as it related to attorneys fees and payment obligations. On

January 17, 2007, Harper Trust filed an adversary proceeding (Adv. Pro. No. 06-00017) against Wilson/Card to determine that the contract for deed property was not property of Wilson/Card and not subject to the automatic stay, or alternatively to determine that if such property was property of the Wilson/Card estate then the contract for deed is an executory contract to be accepted or rejected. Prior to a decision in the adversary proceeding, Wilson Scotch filed a chapter 12 bankruptcy case on May 24, 2006. The adversary proceeding, given the filing of the Wilson Scotch case, was dismissed without prejudice.

The second amended proof of claim no. 1-3 requests fees and costs of $11,849.27. No breakout for fees and costs is identified on the addendum to this amended proof of claim. The fee statement submitted post-hearing at the Court's request at doc. # 215, requests fees of $11,482.50. No breakout for costs exists on such statement. Based on the Harper Trust Ex. 1, the Court calculates costs of $451.77. If the Court subtracts the fee request of $11,482.50 from the Harper Trust Ex. 1 amount for fees and costs of $11,849.27, the Court calculates a difference of $366.77, [$11,849.27 - 11,482.50 = $366.77] and not a difference of $451.77, which the Court calculates if it adds the expenses identified on each monthly billing statement. Consequently the Court only allows costs of $366.77.

The Court initially notes that although the hourly rate charged by Dye was in dispute as Dye increased the rate from $150.00 to $200.00, Deschenes did stipulate on the record that either rate is reasonable but questioned why the rate was increased. The Court on the record during the hearing concluded that $200.00 per hour is a reasonable rate and now again concludes that such rate is reasonable as attorneys are permitted to increase hourly rates during the pendency of representation provided the changed rate is deemed reasonable.

Harper Trust offered testimony of Binney, as an expert. Deschenes in commencing his cross examination of Binney stipulated that Binney could be qualified as an expert. The Court so ordered.

Based on prior proceedings in this case, the parties have stipulated that the real property has a value of $600,000. *See* doc. # 191.

The hearing provided the following testimony. Dye became involved in the case as the attorney for Harper Trust after Wilson/Card filed a chapter 13 bankruptcy case. He spent considerable time explaining to Paul Harper, who resides out-of-state, the impact the bankruptcy code may have on the Harper Trust contract for deed, given Mr. Harper's limited knowledge in bankruptcy. Dye concluded that the buyer under the contract for deed was not Wilson/Card, but was Wilson Scotch, a nondebtor. During the pendency of the Wilson/Card bankruptcy case, they changed attorneys and proceeded *in propria persona*, before retaining Deschenes. Dye initiated the adversary proceeding, Adv. Pro. No. 06-00017, in January 2006 to prompt Wilson/Card to either respond to the allegations concerning whether the property was properly included in their bankruptcy case or file a bankruptcy case for Wilson Scotch. After Harper Trust filed the adversary proceeding in January 2006, Wilson Scotch elected to file bankruptcy in May 2006.

During direct examination, Deschenes inquired as to whether Wilson Scotch was in default under the terms of the agreement and if not why should Wilson Scotch be responsible for Dye's fees prior to February 2006, when a payment would be due. Dye responded that Wilson/Card's scheduling of the property and the debt to Harper Trust in their individual case prompted his involvement to sort out what Wilson/Card's intentions were concerning the property and their payments on the debt. His prepetition involvement in the Wilson Scotch case

5

began in November 2005 and continued until May 24, 2006, when it finally filed its bankruptcy case. His postpetition involvement continues to the present time. Deschenes inquired as to why a motion to modify stay had not be filed in substitution for the adversary proceeding. Dye testified that he concluded on behalf of Harper Trust an adversary proceeding would provide possibly broader relief such as determining the entity issue as to the owner of the contract property, which a motion to modify would not determine.

      Deschenes inquired with Dye why considerable time involved joint conferences with Dye's associate, Nikolaos G. Geranios. Dye testified that given his health issues, his kidney transplant and Mr. Geranios's minimal chapter 12 experience he needed to converse frequently with Mr. Geranios and his client after reviewing the pleadings filed in the Wilson/Card case and the adversary proceeding. Deschenes inquired as to why Dye filed a motion to dismiss and a motion for credit reports in the Wilson/Card case, when the motion to dismiss was withdrawn and when the motion for credit reports was denied by the Court, and why Wilson Scotch should be required to pay for such services. Dye replied that merely because the motion to dismiss was withdrawn and the motion for credit reports was denied such result did not mean that such motions were without merit. Dye's expert witness, Binney, responded to Deschenes inquiry by stating that although he had not filed a motion for credit reports in any case that he could recall, he did not state that such practice was unreasonable or without merit.

      Dye testified as to the contractual provisions contained in the contract for deed that provides for reasonable attorneys fees to the prevailing party for any contract enforcement, including any proceeding in bankruptcy and that provide for the payment of the purchase price.

      Binney, through his testimony, stated that based on his review of the files, the court cases

6

and proceedings, all pleadings and comparing the time entries with the work performed, the time and fees billed by Dye were reasonable. He did testify that he discovered extraneous billing material in Dye's first billing statement (Debtor's Exhibit 1) submitted by Dye to Deschenes and so informed Dye who then revised the billing statement to what is described on the Harper Trust Exhibit 1. Wilson Scotch provided no witness to refute Binney's opinion that Dye's fees are reasonable given the time involved and circumstances of the two cases and the adversary proceeding.

Dye did recall himself to the witness stand to clarify that he had not itemized all time for services rendered on behalf of the Harper Trust given some access problems from Rochester, Minnesota, following his kidney transplant. Consequently, the billing statement does not show all entries for services rendered even at no charge.

"The amount of a creditor's 'claim' is typically determined as of the petition date, and includes the principal amount of the obligation plus all matured prepetition interest, fees, costs, and charges owing as of the petition date. The allowability of these prepetition amounts as part of the secured creditor's 'claim' is not determined by section 506, but is governed by section 502 in conjunction with other provisions of the Code." 4 COLLIER ON BANKRUPTCY, ¶ 506.04[1] (15th ed. rev.). "Section 506(b) prescribes that postpetition interest, fees, costs or charges may be added as part of the allowed amount of an allowed secured claim to the extend that the claim is oversecured." *Id*.

This Court stated in *In re Shelton*, 21 Mont. B.R. 31, 36 (Bankr. D. Mont. 2002), the following:

> As § 506(b) does not apply, the Court must first consider the components of her

claim and the allowability of each component under § 502(b)(1). In considering allowability, "reasonableness and enforceability are not . . . coterminous." [*Sanson Investment Co. v. 268 Ltd. (In re 268 Ltd.)*], 789 F.2d at 675-6. Neither the Trustee nor the Debtors have objected to allowance of the principal and interest asserted in Walkup's proof of claim No. 8, or to the validity of its lien. The Trustee has objected to the attorney's fees itemized in Walkup's proof of claim. Pursuant to 11 U.S.C. § 502 and after an objection is made to a claim, the Court shall "determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that – (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]" 11 U.S.C. § 502(b)(1).

In considering the prepetition fees billed by Dye and their reasonableness, the Court considers the issue raised by Wilson Scotch involving duplicative time. The Court in reviewing the time entries concludes that unnecessary duplicative time has been billed based upon the following case law:

> In general, no more than one attorney may charge the estate for intraoffice conferences, meetings and court appearances unless an adequate explanation is given. *In re Bob's Supermarkets, Inc.,* 12 Mont.B.R. at 121-22 ( *quoting In re Adventist Living Centers, Inc.,* 137 B.R. 701, 717 (Bankr.N.D.Ill.1991)). Entries for attorney office conferences must be intricately scrutinized. *In re Bob's Supermarkets, Inc.,* 10 Mont.B.R. 240, 242, 146 B.R. 20, 22 (Bankr.Mont.1992), *aff'd, In re Bob's Supermarkets, Inc.,* 12 Mont.B.R. at 121-222. Such fees will be disallowed where they involve duplication of effort. *In re Crown Oil, Inc.,* 18 Mont.B.R. 169, 170, 257 B.R. 531 (Bankr.Mont.2000).

*In re Grosswiler Dairy, Inc.*, 257 B.R. 523, 531 (Bankr. D. Mont. 2000). Dye has not satisfactorily explained the necessity of all the time billed by Mr. Geranios and him for combined consultations. The Court subtracts the following duplicative time and fee entries:

| Date | Staff | Description | Court Deduction | Deduction Amount |
|---|---|---|---|---|
| 3/3/06 | HVD | Conference with NG regarding actions | .3 | $60.00 |

|         |     |                                                                                                                         |     |          |
| ------- | --- | ----------------------------------------------------------------------------------------------------------------------- | --- | -------- |
|         |     | in absence.                                                                                                             |     |          |
| 3-27-06 | HVD | Review Deschenes filings in case; review correspondence from NG regarding same                                          | .4  | $80.00   |
| 3-28-06 | NG  | Review VIA ECF Notice docket; print out chapter 12 plan fax to Paul Harper; initial review of chapter 12 plan           | .5  | $75.00   |
| 3-28-06 | NG  | Conference with HVD                                                                                                     | .2  | $30.00   |
| 3-29-06 | NG  | Telephone conference with Paul Harper; review chapter 12 pre-confirmation hearing order; transmittal memo to client     | .65 | $97.50   |
| 3-30-06 | NG  | Telephone conference with HVD regarding matters; left message for Gary Deschenes                                        | .4  | $60.00   |
| 4-04-06 | NG  | Telephone conference with HVD regarding status                                                                          | .2  | $30.00   |
| 4-06-06 | NG  | Emails to and from HVD; telephone conference with HVD; transmit first draft of stipulation to Gary Deschenes            | .5  | $75.00   |
| 4-10-06 | HVD | Correspondence from Deschenes - motion to assume                                                                        | .1  | $20.00   |
| 4-19-06 | HVD | Voice mail to Wicks regarding callback; conference with NG regarding current case status                                | .2  | $40.00   |
| 5-24-06 | HVD | Phone call to Deschenes                                                                                                 | .6  | $120.00  |

|  |  |  | regarding status of documents and revised plan; phone call to Stensland regarding deposition and conversion of collateral; correspondence to Stensland regarding conversion of collateral |  |  |
|---|---|---|---|---|---|
| 5-24-06 |  | HVD | Voice mail message from Stensland regarding sale of bulls; phone call to Paul regarding status | .8 | $160.00 |

Total reduction for duplicative time and time billed on the date of filing:    $847.50

The Court disallows the charges for Dye's time billed on the date of filing, May 24, 2007. Such charges may be included in Dye's postpetition charges.

Deschenes inquired of Dye why 4.1 aggregate hours on December 6, 7, 14 and 15, 2006, were necessary for discussing with client, preparing and attending Wilson/Card's § 341 meeting. Dye testified that given his client's minimal knowledge of bankruptcy considerable time was necessary to answer questions and to consider why Wilson/Card had included the Wilson Scotch property in their individual bankruptcy case. Although the Court questions the need to have spent 4.1 hours for such services, Binney testified that the time and charges were reasonable. Such testimony was not refuted. The Court allows the 4.1 hours.

The remaining entries at issue involve Dye billing for a motion to supply credit reports, doc. # 63, that this Court denied, doc. # 71, and a motion to dismiss, doc. 31, which was withdrawn the succeeding day, doc. # 34. Wilson Scotch contends that such motions were unnecessary and that Harper Trust was not the prevailing party on either motion. Dye testified that although the motions were either denied or withdrawn that the denial or withdrawal does not

mean that they were without merit. Pursuant to 11 U.S.C. § 502(b)(1), as noted above, the Court considers the allowance of the Harper Trust request for reasonable attorneys fees by reviewing the contract for deed and applicable law. In applying Montana law to the attorneys fees request, the Court looks to the contract and State law. Dye testified that the contract for deed contains a prevailing party attorney fee provision for services rendered in activities to collect, enforce, and litigate including any bankruptcy matters or proceedings.

> The Montana Supreme Court as stated:
>
> Several previous cases have served to clarify the term "prevailing party." *E.C.A. Environ. Management v. Toenyes* (1984), 208 Mont. 336, 345, 679 P.2d 213, 217-218, states that "[n]o one factor should be considered in determining the prevailing party for the purpose of attorney fees. The party that is awarded a money judgment in a lawsuit is not necessarily the successful or prevailing party." In the present case, even though petitioner received a "money judgment", she is not necessarily the prevailing party.
>
> In *Lauderdale v. Grauman* (1986), 223 Mont. 357, 359, 725 P.2d 1199, 1200, we stated, "[T]here are cases where, at the close of all litigation, there is no actual 'prevailing party.' [T]here is no prevailing party where both parties gain a victory but also suffer a loss." In the present case, the District Court did not abuse its discretion in concluding that there was no "prevailing party" and that each party shall pay his/her own costs.

*In re Marriage of Hebert* (1992), 255 Mont. 69, 72, 840 P.2d 584, 586. In *Lauderdale*, 223 Mont. at 359, 840 P.2d at 1200, the Supreme Court concluded,

> "[T]here is no prevailing party where both parties gain a victory but also suffer a loss." *Parcel v. Myers* (Mont.1984), 697 P.2d 89, 91-92, 41 St.Rep. 2426, 2429, citing *Knudsen v. Taylor* (Mont.1984), 685 P.2d 354, 357, 41 St.Rep. 1490, 1493.
>
> However, the case before us is not of that nature. Graumans have suffered no trial loss. They dismissed their counterclaim because it was rendered moot. This is clearly distinguishable from a situation where the jury found against Graumans on the counterclaim. Because Graumans are the prevailing party, they were properly awarded attorneys' fees. *Jordan v. Elizabethan Manor* (1979), 181 Mont. 424, 434, 593 P.2d 1049, 1055.

In applying the foregoing Montana cases to the case *sub judice*, the Court concludes that Harper Trust did not lose the motion to dismiss, doc. # 31, as it was withdrawn. As to the motion for credit reports, the Court concludes that this contested matter constituted a skirmish but that it was not determinative of the war. As no one factor is determinative in determining a prevailing party, the Court concludes that tactical motions that are not determinative of the ultimate outcome do not defeat the status of a prevailing party. The time billed by Dye under the facts of this case for these motions is compensable. In this case, Harper Trust has prevailed in forcing Wilson/Card to initiate a separate chapter 12 case to properly deal with the contract for deed property.

For cause, the Court will issue a separate Order that provides as follows:

IT IS ORDERED that Wilson Scotch's objection to the attorneys fees identified in Harper Trust's second amended proof of claim 1-3 is sustained in part and overruled in part; Harper Trust's prepetition attorneys fees identified in its second amended proof of claim no. 1-3 are allowed in the amount of $10,635.00, and its costs are allowed in the amount of $366.77, for a total of $11,001.77.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana