UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**JEFFERY PAUL WILSON** and
**SHONI LEE CARD**,

                    Debtors.

Case No.  **05-65161-12**

In re

**WILSON SCOTCH MOUNTAIN
ANGUS LLC**,

                    Debtor.

Case No. **06-60369-12**

# MEMORANDUM  OF  DECISION

At Butte in said District this 22ⁿᵈ day of June, 2009.

In the above-captioned Chapter 12 cases an Application for Oversecured Creditors

Attorney Fees and Costs ("Application") (Docket No. 347) was filed on December 7, 2007, by

creditor Paul E. Harper Trust ("Harper Trust"), seeking an award of professional fees for its

attorney Harold V. Dye ("Dye") and his firm Dye & Moe, P.L.L.P., of Missoula, Montana, in the

amount of $53,480.00, plus costs in the amount of $30,031.11 which include expert witness fees.

Debtors filed an objection that the amounts requested are not reasonable under 11 U.S.C. §

506(b), and a hearing on the Application was held at Missoula on March 12, 2009[1].  Dye

---

[1]The Application had been held in abeyance pending Harper Trust's appeal of the Order
confirming Debtors' Chapter 12 Plan.  That Order was affirmed by a decision of the district court
docketed in this case on February 5, 2009 (Docket No. 419).

1

appeared in support of his Application, and submitted the determination of the reasonableness of his fees to the Court.  Debtors were represented by attorney Gary S. Deschenes ("Deschenes"), who testified and made oral argument.  The Chapter 12 Trustee James D. Volk ("Volk") appeared and stated that he "totally agreed" with Deschenes' argument that a lot of the activity by Harper Trust was unnecessary because it wanted to foreclose on and recover its collateral consisting of Debtors' ranch property in Potomac, Missoula County, Montana.  Volk advised the Court that the Debtors are current in payments due under their confirmed Plan, and had one payment remaining under the Plan[2].  No exhibits were admitted.  At the conclusion of the hearing the Court took the matter under advisement.

This Court has jurisdiction of this case under 28 U.S.C. § 1334(a).  Harper Trust's Application for professional fees from the estate under § 506(b) is a core proceeding under 28 U.S.C. § 157(b)(2).

After review of the Application and the record, for the reasons set forth below Debtors' objection will be sustained in part and overruled in part by separate Order.  The expert witness fees requested as costs in the Application will be disallowed for failure to file a separate application for compensation under Mont. LBR 2016(a), (e) and LBF 17, and Dye will be awarded reasonable fees in the amount of $40,000 and costs in the amount of $2,116.61 as part of Harper Trust's oversecured claim under § 506(b).

## FACTS & PROCEDURAL HISTORY

Debtors Jeffery Paul Wilson ("Jeffery") and Shoni Lee Card ("Shoni") are married and

---

[2]The Seventh Amended Plan (Docket No. 333) was confirmed.  It provided for a final plan payment in the amount of $70,442.16 on May 15, 2009.

2

live at 25195 Hwy 200 E., Potomac, Missoula County, Montana.  Shoni works as a veterinarian.

Jeffery owns the Debtor Wilson Scotch Mountain Angus, LLC ("Wilson Scotch Mountain"), and

operates a purebred registered Angus cattle operation, and grows hay, on land it purchased from

Harper Trust under a contract for deed.  Jeffery and Shoni live on the land.

   The petition in Jeffery's and Shoni's Case No. 05-65161 was filed on October 15, 2005[3].

They originally filed the case as a Chapter 13 case, but converted to the case to Chapter 12 on

November 7, 2005.  They filed motions to extend time to file their Plan.  Harper Trust objected

and moved to dismiss the case which it later withdrew on March 22, 2006.  Jeffery and Shoni

filed their first Chapter 12 Plan on March 27, 2006.  Objections to confirmation were filed by

Harper Trust and others, and after an agreed delay[4] the preconfirmation hearing was set for May

11, 2006, then continued to June 1, 2006, due to Dye's medical leave.  Harper Trust filed its first

objection to confirmation on April 11, 2006 (Docket No. 52), objecting on several grounds

including feasibility, lack of good faith, and failure to treat Harper Trust's claim at a market

interest rate and market term[5].

   On January 16, 2006, Harper Trust filed Proof of Claim No. 9 in Jerry and Shoni's Case

No. 05-65161-12, asserting an unsecured nonpriority claim in the amount of $512,730.24, which

it amended on August 9, 2006.  Jeffery and Shoni filed an objection in 05-65161 admitting that

---

[3]It was originally filed under Chapter 13.  Debtors moved to convert the case to Chapter 12 on October 31, 2005, which was granted.

[4]Docket No. 47 is a stipulation between the parties to delay the preconfirmation hearing. It cites, *inter alia*, Dye's absence from his office on medical leave.

[5]Dye's billing statements filed with instant application do not include his fees for the first objection to confirmation.  The billing statements begin at 5/01/2006.

3

they are guarantors of the debt, but that the value the collateral in Case No. 06-60639-12 had not been determined.

On January 17, 2006, Harper Trust filed a complaint against Jeffery and Shoni, Adv. No. 06-00017, to enforce its contract for deed.  That adversary proceeding was held in abeyance, and then was dismissed on November 1, 2006, on Harper Trust's oral motion made at hearing on October 31, 2006.

The petition in the Wilson Scotch Mountain Case No. 06-60369-12 was filed on May 24, 2006, with a Chapter 12 Plan.  On the same date Jeffery and Shoni filed their first amended Plan in Case No. 05-65161-12.  Harper Trust filed its second objection to confirmation in Case No. 05-65161-12 on May 30, 2006[6], for which Dye billed $180.00 on his billing statement.

The preconfirmation hearing in Case No. 05-65161-12 was held on June 1, 2006, after which the Court set the hearing on confirmation for August 3, 2006.  Harper Trust moved to dismiss Case No. 05-65161-12 on June 7, 2006, contending the Debtors were not eligible under 11 U.S.C. § 109(f).  Dye's billing records include several entries in May 2006 involving discovery and depositions of the Debtors and expert witnesses.  His billing statement shows $420 in fees incurred on June 7, 2006, related to the motion to dismiss which was set for hearing on August 3, 2006.

On June 9, 2009, Jeffery and Shoni filed their motion to administratively consolidate the two cases.  Harper Trust objected and that matter was set for August 3, 2006.  Dye billed $80 on

---

[6]Harper Trust's second objection (Docket No. 68) repeats several of its previous objections, and further objects based on the plan's treatment of other creditors' secured claims. Those other creditors, including Ag Sales, Valley Bank and Missoula Federal Credit Union, all were represented by counsel in this case and were active.

June 19, 2006, for preparing the objections to consolidation.

Jeffery and Shoni filed a Second Amended Plan on August 2, 2006 (Docket No. 107). At the hearing on August 3, 2006, all parties agreed to continue all pending matters and they were rescheduled for September 21, 2006. Dye requests fees for August 2 and 3, 2006, totaling $2,160.00 for services related to the continuance and confirmation.

Leading up to the September 21, 2006, hearing, Dye's billing statements show $4,580.00 in fees from 9/18/2006 through 9/22/2006. Debtors moved to continue the September 21, 2006, hearing in order to depose the creditors' experts. After the hearing on September 21 and 22, 2006, based on the admission of Debtors' counsel the Court denied confirmation of the Second Amended Plan and entered a scheduling Order (Docket No. 124) and resetting the hearing on confirmation for October 31, 2006.

Jeffery and Shoni filed their Third Amended Plan on October 11, 2006, to which Harper Trust and other creditors refiled objections to confirmation, and the confirmation hearing was reset for October 31, 2006. Dye's billing records shows fees preparing for the confirmation hearing from 10/16/2006 through 10/31/2006 totaling approximately $5,540.00, with another $1,100 incurred on 11/12/2006 and 11/13/2006, and $880 on 11/14/2006 through and 11/16/2006, for preparing the post-hearing brief.

Harper Trust had moved to dismiss Case No. 06-60369-12, but withdrew that motion at hearing held on October 31, 2006. Confirmation of the Wilson Scotch Mountain Plan originally had been scheduled for August 3, 2006, but the hearing was continued when the Debtor filed an amended Plan in Case No. 06-60369-12 on August 2, 2006, and at the continued hearing on September 22, 2006, the Court ruled the amended Plan was not confirmable.

Harper Trust filed its Proof of Claim in Case No. 06-60369-12 on August 8, 2006, and filed amended claims on October 20, 2006, and again on December 13, 2006, after the Debtor filed an objection and motion for valuation of Harper Trust's security (Docket No. 76). Harper Trust filed its Proof of Claim No. 9 in 05-65161-12 on January 16, 2006, and filed an amended Claim 9 on August 9, 2006. Jeffery and Shoni filed an objection (Docket No. 155) to Harper Trust's Claim 9 on October 30, 2006, and that objection was set for hearing on December 7, 2006.

The second contested confirmation hearing held on October 31, 2006, included exhibits and testimony of the Debtors, Debtors' expert J.T. Korkow ("Korkow"), and Harper Trust's experts Jack Wicks ("Wicks") and Shirlee Walker ("Walker"), after which the Court took confirmation under advisement. After that hearing the cases were consolidated for purposes of joint administration, but not for substantive consolidation, by Orders entered on November 1, 2006, in both cases[7]. Dye's billing records show fees incurred on 6/7/2006 and 6/19/2006 related to Harper Trust's motion to dismiss the case and objecting to consolidation, both of which Harper Trust withdrew.

After a hearing on December 7, 2006, the Court entered an Order in both cases (Docket Nos. 86 in Case No. 06-60369-12 and Doc. No. 191 in 05-65161-12) stating that Debtors' motion for valuation of Harper Trust's security and their objection to its claim were resolved by settlement, at which counsel for the parties, Jeffery and Shoni, all stated on the record that they agreed with the valuation of the farm and ranch real property in Missoula County, Montana, securing Harper Trust's claim in the amount of $600,000.

---

[7]Thereafter Case No. 05-65161-12 was the lead case in which all matters were filed.

6

Harper Trust's most recent amended claim in 06-60369-12 asserted a claim in the amount of $526,665.11, including postpetition interest and attorneys fees, secured by the real estate valued at $600,000.  The Debtors filed an objection on December 21, 2006, objecting to the prepetition attorneys fees in Harper Trust's claim in the amount of $11,849.27.  Harper Trust responded setting that objection for hearing on February 8, 2007.  Dye billed $1,380.00 in fees from 1/2/2007 through 2/12/2007 related to the objection to claim, and another $180 on 2/23/2007 revising the statement of attorney fees on Harper Trust's claim.

On February 7, 2007, the Court entered a Memorandum of Decision and Order (Docket Nos. 205 & 206) sustaining Harper Trust's objections in part[8] and denying confirmation of Debtors' Plans.  The Court denied Harper Trust's motion to dismiss, granted Debtors 20 days to file a further amended Plan and reset the confirmation hearing on March 30, 2007.  The Memorandum concluded that Debtors failed to satisfy their burden of proving that their Plans were feasible as required by 11 U.S.C. § 1225(a)(6), but that the issue of feasibility was premature because of Debtors' failure to satisfy their burden under § 1225(a)(5)(B)(ii) to establish an appropriate cramdown interest rate for Harper Trust's secured claim[9].

Debtors filed their Fourth Amended Plan on February 27, 2007, and after Valley Bank filed an objection the Debtors filed a Fifth Amended Plan on March 27, 2007, to which Harper Trust filed an objection, including but not limited to its earlier objections based on feasibility and

---

[8]The Court concluded Debtors satisfied the income requirement for family farmers under 11 U.S.C. § 101(a)(18) and so were eligible for Chapter 12 relief under 11 U.S.C. § 109(f).

[9]Debtors' proposed cramdown interest rate was 1.25% below the prime rate, rather than prime plus an appropriate risk factor required under longstanding case law.  *Till v. SCS Credit Corp.*, 541 U.S. 465, 478-80, 124 S.Ct. 1951, 1961, 158 L.Ed.2d 787 (2004); *In re Fowler*, 903 F.2d 694, 698-99 (9th Cir. 1990).

7

the proposed cramdown interest rate.  The Fifth Amended Plan provided for the sale of 20 acres and payment to Harper Trust of $150,000.

On March 13, 2007, the Court entered a Memorandum and Order on Debtors' objection to Harper Trust's amended claim (Docket Nos. 226 & 227).  The Court sustained Debtors' objections in part and overruled them in part, and allowed Harper Trust prepetition attorney fees for Dye in the amount of $10,635 and costs of $366.77[10] for a total of $11,001.77 as part of Harper Trust's allowed claim.  The Court disallowed $847.50 for duplicative time and time billed on the petition date.

On March 29, 2007, Debtors filed a motion to continue the confirmation hearing due to weather conditions and the proposed sale of 20 acres of their property.  The Court granted the motion and continued the confirmation hearing and other hearings to May 10, 2007.  Dye's billing statement shows $660 in fees incurred from 3/29/07 to 3/30/07 dealing with the continuance of the hearing and the proposed sale.

On May 1, 2007, Dye billed $940 for services, including preparation for the May 10, 2007, hearing, but also including approximately $500 involving the sale of Debtors' heifers, which were never part of Harper Trust's collateral.  Dye billed another $360 in fees on 5/4/2007 and 5/8/2007 involving Valley Bank's objection to confirmation.

Debtors reached settlements with Valley Bank of Hot Springs and Valley Bank of Arlee (together "Valley Bank") on their claims on May 9, 2007, prior to the May 10, 2007, hearing[11].

On May 9 and 10, 2007, Dye billed a total of $2,260 in fees corresponding with the other

---

[10]The costs were reduced from $451.77.

[11]The stipulations with Valley Bank were updated on August 9, 2007.

8

secured creditors' attorneys and attending the confirmation hearing.  Debtors and their expert testified at the hearing, as did Paul Harper and Walker.  After the May 10, 2007, hearing the Court granted the parties time to file their briefs on confirmation and took the matter under advisement.  Dye billed a total of $2,120 through 5/22/2007 working on Harper Trust's brief, and billed $540 more on 6/5/2007 for Harper Trust's reply brief.

Debtors employed a realtor to market and sell 20 acres of their property on May 7, 2007.  On July 5, 2007, Debtors filed a motion to sell the 20 acres and a motion for expedited hearing.  Harper Trust filed an objection and a motion for adequate protection, and those matters were set for hearing on July 12, 2007.  Dye billed $920 on 7/2/2007 and 7/6/2007 on the expedited sale, billed $1,000 on 7/9/2007 and 7/20/2007, and billed $1,100 on 7/12/2007 for the hearing.

The Court overruled Harper Trust's objections to the sale at the July 12, 2007, hearing and entered an Order, Docket No. 289, granting Debtors' motion to approve the sale of 20 acres for $275,000 free and clear of liens, with valid liens to attach to the proceeds.  The Court urged Debtors and Harper Trust "to seek alternatives to future litigation in light of this change in circumstances."  From 7/13/2007 through 7/26/2007, and 7/31/2007, Dye billed a total of $900 for services involving settlement negotiations, but no settlement was reached.

On July 26, 2007, Debtors filed a Sixth Amended Plan.  On July 27, 2007, based on that filing the Court denied confirmation of the Fifth Amended Plan as moot and set the hearing on confirmation of Debtors' Sixth Amended Plan for confirmation hearing in August 2007, along with Harper Trust's motion for adequate protection.  Harper Trust filed another objection to confirmation.  Dye billed $400 for research and drafting and billed another $1,400 preparing for and attending the hearing which was held on August 30, 2007.  Dye and Deschenes appeared,

and the Court considered the testimony from all prior confirmation hearings as part of the record. As before, the Chapter 12 Trustee James D. Volk appeared in support of confirmation. Objections of other creditors were resolved by stipulation.

After the August 30, 2007, hearing the Court entered an Order, Docket No. 316.  The Court granted Harper Trust and Debtors time to file additional briefs on confirmation and Harper Trust's motion for adequate protection, and the Court ordered $175,000 in proceeds from the sale of the 20 acres of Debtors' property paid to Harper Trust as a partial distribution.  Dye filed his brief on September 26, 2007.  Dye's billing statements include entries for fees totaling $1,920 from 9/18/2007 through 9/26/2007, in researching and preparing Harper Trust's brief.

The final fees incurred by Dye in his billing statements, beginning 9/28/2007 through 10/9/2007 involve matters in the Montana Water Court, and another motion to dismiss, totaling $1,100.00.  Dye explains in the Application at footnote 1 that Jeffery did not appear at a hearing before the Montana Water Court, which allegedly resulted in a report dismissing the water right claims for Harper Trust's collateral, and that Dye had to act to show "that such an order was in violation of the automatic stay."  Dye offered no evidence at the hearing on his Application in support of these contentions.  The docket does not show that a motion to modify stay ever was filed to authorize a proceeding against Debtors' water rights in the Water Court, and no relief from the stay was granted.

The Court entered its Memorandum of Decision on confirmation on November 7, 2007, with a separate Order, overruling Harper Trust's objections to confirmation (Docket Nos. 329 & 330).  The Court directed Debtors to file a Final Amended Plan to make needed corrections, incorporate stipulations, adjust Harper Trust's allowed claim to reflect the $175,000 partial

10

distribution, and to allow adequate time for the Debtors to make plan payments on time.  The

Court overruled Harper Trust's objections based on the requirement of § 1225(a)(5)(B)(i) that it

retain its lien, based on Debtors' proposed use of the sale proceeds which are cash collateral, and

rejected its contention that it was not adequately protected by an equity cushion after the sale of

20 acres. The Court noted at page 33 and of its Memorandum that "the $175,000 partial

distribution made a dramatic improvement on Harper Trust's debt to security ratio."  At page 34

the Court found that "at least $555,000 in value remains to secure Harper Trust's lien."

At the time of the final confirmation hearing Harper Trust had not yet filed its

Application for professional fees under § 506(b).  As a result, the Court at pages 35 and 36

calculated Harper Trust's allowed claim after the $175,000 partial distribution to be in the

amount of $383,757.11 secured by property worth at least $555,000.

The Court next concluded at pages 37 and 38 that the Sixth Amended Plan's increased

cramdown interest rate of 8.5% satisfied the formula approach of *Fowler* and *Till*.  Harper Trust

objected but offered no evidence at the hearing that controverted the expert testimony offered by

the Debtors with respect to either the interest rate or the term.  The Court overruled Harper

Trust's objection to Debtors' use of cash collateral, following longstanding case law under 11

U.S.C. § 1205(b)(1) and 11 U.S.C. § 363(e) which allowed use of cash collateral proposed by a

plan which adequately protects the interest of the creditor in the collateral.  Memorandum, at pp.

42-45.

On the issue of feasibility, the Court concluded at page 48 that, with the sale and partial

11

distribution of $175,000[12] to Harper Trust, and the Debtors' expertise in animal science and Trustee's enthusiastic support, Debtors satisfied their burden of proving that their Plan is feasible under § 1225(a)(6).  The Court deemed Harper Trust's other objections, based on negative amortization and lack of good faith, abandoned since they were not addressed in its brief.

In accordance with the Court's Order the Debtors filed a Seventh Amended Plan on November 19, 2007 (Docket No. 333).  That Plan treats Harper Trust's claim as secured by property with a value of $575,000, payable in payments of $36,675.00 over 30 years at 8.5%, with a 5 year balloon payment due on the last day of 2012.  On November 20, 2009, the Court entered an Order confirming Debtors' Seventh Amended Plan and an Order for the Clerk to remit all remaining sale proceeds to the Debtors for disposition in accordance with the confirmed Plan. Harper Trust filed a notice of appeal of the Order confirming Debtors' Plan.  Debtors filed a cross appeal of the order overruling their objections to Harper Trust's prepetition attorney fees.

Dye filed his Application (Docket No. 347) on December 7, 2007, requesting postpetition fees for himself and other professionals of his firm under § 506(b) in the amount of $53,480.00, plus costs in the amount of $30,031.11 which includes expert witness fees for Wicks ($10,203.50) and Walker ($17,711.00).  Other secured creditors filed their applications for fees. The Debtors filed objections to several the fee applications, and set them for hearing on February 7, 2008.  By Order entered on February 5, 2008, the Court vacated the hearings and held the contested fee applications[13] in abeyance until the conclusion of the appeal.

---

[12]Without the sale and partial distribution the Court likely would have concluded the Plan was not feasible.  Memorandum, p. 48.

[13]Unopposed applications for compensation of professionals, except for that filed by Debtors' attorney Deschenes, were taken up and decided.

12

On September 5, 2008, Debtors filed an application to employ a real estate agent to sell their real estate. On the same date Harper Trust filed another motion to dismiss, alleging breach of Debtors' confirmed Plan by listing additional property for sale. The application to employ realtor was set for hearing on September 19, 2008, and was approved at the hearing at which Dye appeared but called no witnesses and offered no exhibit or other evidence in opposition to the application.

Harper Trust's motion to dismiss was set for hearing on October 9, 2008. Dye appeared at the hearing representing Harper Trust but offered no testimony or exhibits in support of its motion, but Dye offered attorney argument of gross mismanagement or fraud by Debtors. Dye's Application does not include fees for this motion, which the Court denied by Order entered on October 9, 2008.

On February 5, 2009, an order from the district court was docketed in this case affirming this Court's Order confirming Debtors' Plan. Dye's Application for compensation was set for hearing with the other contested applications at Missoula on March 12, 2009. The Debtors reached stipulations resolving the applications for compensation filed by Valley Bank and Ag Sales, which were approved[14]. The Court took Dye's Application under advisement.

**Dye's Application**.

Dye's Application includes monthly billing statements for services provided in both cases beginning 5/1/2006 through 10/9/2007, and costs incurred. At the hearing on March 12, 2009, Dye stated that the bulk of his $53,480 in professional fees requested in the Application were

---

[14]Valley Bank was awarded $20,896.10 in oversecured fees and costs under § 506(b). Ag Sales was awarded $12,500 in fees and costs. Missoula Federal Credit Union was awarded

incurred during the case prior to the time of confirmation, and that he is not asking for fees on

appeal.  Dye offered no testimony or exhibits in support of his fees or those of Wicks and

Walker, and submitted the determination of reasonableness to the Court.

Deschenes testified that Harper Trust's Application for fees and costs are not reasonable.

Dye and Deschenes both are experienced bankruptcy attorneys in this district.  Deschenes

testified that he has never appeared in a case which was fought this long and this hard, and that

Harper Trust fought and dragged out everything trying to get the property back, and that it is not

reasonable for the Debtors to have to pay the for Harper Trust's attorney and expert witness fees.

On cross examination Deschenes testified that his own fees exceed $81,000, and Debtors'

agricultural expert Korkow was paid approximately $11,000, but he testified that Korkow did far

more than Harper Trust's experts.  He testified that the Debtors filed six or seven Plans, but

admitted that the record speaks for itself[15].

Also attached to Harper Trust's Application are billing statements from Walker and from

Wicks, which Harper Trust seeks as "costs."  Wicks' statement is two pages, a cover page and a

second page showing the dates services were provided, time increment, billing rate, total time, a

description of the services, total fees, and mileage costs totaling $10,203.50, for services

7/10/2006 through 10/31/2006.

Walker's billing statements are in monthly statements beginning July 7, 2006, through

October 2006, then monthly statements for March 2007 and April 2007.  Walker's first two

billing statements describe the services provided each day, but gives only monthly hourly totals

---

[15]Debtors' Seventh Amended Plan makes a total of eight (8) Plans files in Case No. 05-
65161-12.

of 19.00 hours and $3,040.00 in fees for the period ending 7/17/2006, and another $2,800.00 in

fees for 17.50 hours from 7/26/2006 through 8/3/2006.  The next statement for the period from

8/16/2006 through 9/22/2006.  It does not provide any number of hours, and states only a total

fee for the billing period in the amount of $4,350.00.

Walker's next billing statement is for the period from 10/16/2006 through 10/23/2006.  In

this statement Walker provides daily totals for fees.  However, at her hourly billing rate of $160

four out of the five entries during this period lump several hours of fees in daily totals, with the

total amount for the period stated as $2,640.00.  The next billing statement is for the period from

10/24/2006 through 10/31/2006, and provides daily fee totals and a total fee of $2,400 for the

period.  The next billing statement, for the period from 3/9/2007 through 3/30/2007, for the first

time provides the daily hourly totals in addition to the daily fee totals, and a total fee of

$2,145.00 for the period.  Walker's last billing statement is for the period from $4/25/2007

through 5/10/2007, with daily hourly and fee totals and a total fee for the period of $2,976.00.

## DISCUSSION

Debtors object to Harper Trust's Application on the grounds it is unreasonable, and allege

that excess charges exist for work performed and many of the claimed work items were

unnecessary and duplicitous[16].  Harper Trust seeks an award of fees and costs as an oversecured

creditor under § 506(b) which provides:

> To the extent that an allowed secured claim is secured by property the value of
> which . . . is greater than the amount of such claim, there shall be allowed to the
> holder of such claim, interest on such claim, and any reasonable fees, costs, or
> charges provided for under the agreement or State statute under which such claim
> arose.

---

[16]The Court assumes that the objection meant to say duplicative.

15

Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co., 549 U.S. 443, 454, 127 S.Ct. 1199, 1207, 167 L.Ed.2d 178 (2007).

As a result of Travelers, which abrogated the holdings stated in Fobian v. West. Farm Credit Bank (In re Fobian), 951 F.2d 1149, 1153 (9th Cir. 1991), and DeRoche v. Ariz. Industrial Comm. (In re Deroche), 434 F.3d 1188, 1191 (9th Cir. 2006), Harper Trust is not precluded from an award of professional fees based on the fact that the fees were incurred litigating issues of bankruptcy law.  However, the Supreme Court emphasized the limited scope of its holding in Travelers:

> Accordingly, we express no opinion with regard to whether, following the demise of the Fobian rule, other principles of bankruptcy law might provide an independent basis for disallowing Travelers' claim for attorney's fees.  We conclude only that the Court of Appeals erred in disallowing that claim based on the fact that the fees at issue were incurred litigating issues of bankruptcy law.

Travelers, 549 U.S. at 456, 127 S.Ct. at 1207-08.

Harper Trust has the burden to show that it is entitled to fees under the agreement or applicable state law, and in addition under § 506(b) and this Court's Montana Local Bankruptcy Rule 2016-1(d) which provides:

> (d) Fees of Oversecured Creditors.  If oversecured creditors wish to recover reasonable fees, costs, or charges provided for under the agreement under which the claim arose as a portion of the creditor's allowed secured claim pursuant to 11 U.S.C. § 506(b), the professionals retained by a creditor shown to be oversecured pursuant to 11 U.S.C. § 506(b) must file a fee application in accordance with the standards set forth in 11 U.S.C. § 330 and F.R.B.P. 2016(a).  Reasonable fees and expenses of such professionals may be allowed by the Court as a portion of the allowed secured claim.

Because Harper Trust's Application includes its request for fees not only for Dye, but also for other professionals who are not members of Dye's firm, the Court finds that Harper Trust has not complied with LBR 2016-1(d).  The Application characterizes Wicks' and Walker's expert witness fees as "costs", but that is clearly incorrect according to their billing statements.  If professionals are not members of the same firm, they must file separate applications for compensation under LBR 2016-1(a).  This Court has never endorsed allowing, as a shortcut, for

16

several independent professionals to be covered in a single application for compensation, and the Court sees no valid reason to allow such a shortcut for Harper Trust, which was cautioned earlier in this case of the need to comply with Local Rules governing applications for compensation. With respect to the expert witness fees of Walker and Wicks requested in Harper Trust's Application, the Debtors' objection is sustained and they are disallowed for failure to file separate applications under LBR 2016-1(a) and LBF 17.  As a result the Court need not address the merits or reasonableness of the fees and costs requested for Walker[17] and Wicks.

Harper Trust's Application for Dye's professional fees and costs is subject to the longstanding rule of this Court for the allowance of attorney fees under § 506(b), which by its plain language as well as the plain language of LBR 2016-1(d), and the contract for deed, require that fees and costs be "reasonable."

The Ninth Circuit construed § 506(b) *In re Kord Enterprises II*, 139 F.3d 684, 687, 689 (9th Cir. 1998):

> Section 506(b) provides:
>
> > To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement [or State statute][18] under which such claim arose.
>
> § 506(b). Both parties agree that the Bank was an oversecured creditor and thus came within the purview of § 506(b).  The language of that section is clear.  The

---

[17]Walker's billing statements reflect serious problems of lumping, as set forth above, in violation of LBR 2016-1(a) which requires that each task be itemized separately, with "the amount of time involved, and the fee for each time entry."  The current state of Walker's billing statements would result in the Court's denial of compensation for cumulative tasks which exceed one hour.

[18]The phrase "or State statute" was added by amendment by the time of the *Travelers* decision.  549 U.S. at 454, 127 S.Ct. at 1207.

creditor is entitled to attorneys' fees if (1) the claim is an allowed secured claim; (2) the creditor is oversecured;  (3) the fees are reasonable;  and (4) the fees are provided for under the agreement.  *See, e.g., Takisaki v. Alpine Group, Inc. (In re Alpine Group, Inc.)*, 151 B.R. 931, 935 (9th Cir. BAP 1993); *Meritor Mortgage Corp., West v. Salazar (In re Salazar)*, 82 B.R. 538, 540 (9th Cir. BAP 1987).

No dispute exists that Harper Trust satisfies three of the requirements.  Its claim is an allowed secured claim, to which Debtors have never objected[19] or challenged the validity of its lien. Harper Trust has at all times in this case been oversecured, and this Court determined after the 20-acre sale and partial distribution of $175,000 that Harper Trust had a remaining allowed claim in the amount of $383,757.11 secured by property with a value of at least $555,000.  There is no objection that Harper Trust's attorney fees and costs are not provided for under the agreement. Harper Trust's first Proof of Claim No. 9 filed in Case No. 05-65161-12 has attachments including the contract for deed, which at page 17 allows for the prevailing party to be awarded reasonable attorney fees, costs and disbursements allowed by law.  The only dispute is the third *Kord* element – the fees must be reasonable.

This Court has awarded reasonable attorney's fees under § 506(b) to oversecured creditors who found it necessary to engage counsel to defend their secured status.  *In re Copper King Inn*, 10 Mont. B.R. 146, 148 (Bankr. D. Mont. 1991).  In the instant case Harper Trust's secured status as represented in its Proofs of Claims was never challenged.  Harper Trust was never required to engage counsel to defend its secured status, but it was required to engage counsel to ensure that the Debtors satisfied the confirmation requirements regarding treatment of Harper Trust's claim under § 1225(a)(5)(B).

---

[19]Debtors' objections went only to Harper Trust's attorney fees, not Harper Trust's secured status.

18

What constitutes "reasonable attorney's fees" is discussed *In re Hungerford,* 19 Mont. B.R. 103, 136-138 (Bankr. Mont. 2001), *quoting In re Huhn*, 145 B.R. 872, 876 (Bankr. W.D. Mich. 1992):

> Pursuant to Bankruptcy Code § 506(b), a secured creditor is allowed only "reasonable attorney fees". In making a fee determination, the court must consider not only the fee agreement, but the overall fairness and reasonableness of the fee under all of the circumstances. *In re K-Fab, Inc.*, 118 B.R. 240, 242 (Bkrtcy.M.D.Pa.1990) (*citing Lund v. Affleck*, 587 F.2d 75 (1st Cir.1978)).
>
> "Reasonable" fees are those necessary to the collection and protection of a creditor's claim. *In re PCH Assoc.*, 122 B.R. at 204; *In re Kroh Bros.*, 105 B.R. at 521. They include fees for those actions which a similarly situated creditor might have taken. *In re Riker*, 122 B.R. at 970.
>
> In *In re Nicfur-Cruz Realty Corp.*, 50 B.R. 162, 169 (Bkrtcy.S.D.N.Y.1985), the court held that "it is inherently unreasonable to ask a debtor to reimburse attorneys' fees incurred by a creditor that are not cost-justified either by the economics of the situation or necessary to preservation of the creditor's interest in light of the legal issues involved." (quoted with approval in *In re Rubenstein*, 105 B.R. at 203; *In re Kroh Bros.*, 105 B.R. at 521).
>
> An oversecured creditor is not entitled to compensation for its attorneys' fees for every action it takes by claiming that its rights have been affected. *In re Kroh Bros.*, 105 B.R. at 521. "[W]here services are not reasonably necessary or where action is taken because of an attorney's excessive caution or overzealous advocacy, courts have the right and the duty, in the exercise of their discretion, to disallow fees and costs under § 506(b)." *In re Riker*, 122 B.R. at 973 (*quoting In re Wonder Corp. of America*, 72 B.R. 580, 591 (Bkrtcy.D.Conn.1987), *aff'd*, 82 B.R. 186 (D. Conn. 1988)).

*See also In re Digital Products Corp.*, 215 B.R. 478, 482 (Bankr. S.D. Fla. 1997).

Above the Court set out in narrative detail the history of this case relative to Harper Trust's Application. Considering all the circumstances, this Court finds that a significant portion of Dye's services were not reasonably necessary for the protection of Harper Trust's secured claim, and a significant portion of actions were taken by Dye because of excessive caution or overzealous advocacy, as a result of which this Court has the right and the duty in the exercise of

19

its discretion to disallow fees and costs under § 506(b).  *Riker*, 122 B.R. at 973; *Digital Products Corp.*, 215 B.R. at 482.

The Court agrees with the Trustee that many of Dye's services on behalf of Harper Trust were unnecessary.  That is reflected simply by the fact that so many of Dye's services, such as several motions to dismiss, objection to consolidation, the adversary proceeding, and several objections to confirmation, were simply withdrawn or abandoned.  On the other hand, the Court disagrees with Deschenes' contention that none of Dye's services were reasonable.

In Case No. 05-65161-12 the Debtors filed eight[20] Chapter 12 Plans before the Plan was in a condition that it could be confirmed.  For that the Debtors must accept sole responsibility because they had the burden of satisfying the confirmation requirements of § 1225.  Because of the Debtors, no fewer than four full blown contested confirmation hearings were held in this case on September 21 and 22, 2006, October 31, 2006, May 10, 2007, and August 30, 2007, which involved hours of witness testimony and several detailed exhibits.  At earlier confirmation hearings Debtors appeared and admitted that their Plan could not be confirmed.  Confirmation of Debtors' Third Amended Plan was denied after a contested hearing because Debtors proposed a cramdown interest rate which was 1.25% below the prime rate, in violation of the longstanding formula approach required under *Fowler* and *Till*, but without providing any support other than Korkow's unsupported testimony.  After a contested hearing on confirmation of Debtors' Fifth Amended Plan on May 10, 2007, Debtors rendered that Plan moot by filing a Sixth Amended Plan necessitating another full blown hearing on August 30, 2007.  Debtors' actions required Dye to incur attorney fees and costs in response.

---

[20]This number of plans in a Chapter 12 case seems unprecedented in this District.

20

Throughout the case, however, it is undisputable that Harper Trust's status as an oversecured creditor was never challenged, and never in jeopardy.  In that light, Harper Trust's expenditure of tens of thousands of dollars in attorney's fees and expert fees is suspect, since its lien was never in doubt and it was always treated as an oversecured creditor.  For all the tens of thousands of dollars of professional fees incurred by Harper Trust in opposing confirmation, its main successful objection to confirmation based on the cramdown rate did not involve its expert witnesses at all.

The Court took judicial notice of the prime rate of interest (Docket Nos. 92; 329, p. 37 n.32).  Despite the hours of expert testimony, Harper Trust offered no expert testimony with respect to the interest rate or risk factor at any of the hearings.  The Court denied confirmation after the October 31, 2006, confirmation hearing based on the longstanding rule of *Fowler* and *Till* applying a formula for the cramdown rate, because Debtors' proposed cramdown interest rate was 1.25% below the prime rate, rather than the prime rate plus a risk factor.  Dye is an experienced bankruptcy practitioner.  There was no suggestion leading up to the October 31, 2006, confirmation hearing that any change had been made to the longstanding formula approach required under *Fowler* and *Till*.  Therefore Harper Trust would have been in the same position, with the same result, if Dye had done nothing more in this case than file a Proof of Claim and file an objection to confirmation based solely on the Debtors' failure to satisfy the cramdown interest rate requirement of § 1225(a)(5)(B)(ii).  Dye did much more, which the Court considers overlawyering[21], and the Court concludes that not all his services were reasonable.

It is not simply a matter of picking out individual billing entries to disallow.  Dye's

_____

[21]To be clear, the Court believes there was overlawyering on both sides.

21

billing records show many entries of consultation with other creditors, and following up cattle sales which were not part of Harper Trust's security[22], and regular consultation with the client and experts.  His entries preparing objections to confirmation include objections based on the cramdown rate, and feasibility that were initially successful, but also included other objections which were unproven, abandoned, overruled, and repetitious.  From Dye's billing statements, the Court is unable to separate out Dye's services spent on the successful objections from those which were unproven or abandoned.

Dye seeks fees related to proceedings in the state Water Court, arguing that it was necessary to protect Harper Trust's collateral because of stay violations.  Longstanding case authority in this Circuit holds that actions taken in violation of the automatic stay are void, not merely voidable.  *Lone Star Sec. & Video, Inc. v. Gurrola (In re Gurrola)*, 328 B.R. 158, 175 (9th Cir. BAP 2005); *In re Gruntz*, 202 F.3d 1074, 1082 (9th Cir. 2000); *40235 Washington Street Corp. v. Lusardi*, 329 F.3d 1076, 1082 (9th Cir. 2003); *Schwartz v. United States* ("*Schwartz*"), 954 F.2d 569, 570-71, 575 (9th Cir.1992); *In re Deines*, 17 Mont. B.R. 114, 115 (Bankr. D. Mont. 1998); *Hillis Motors, Inc. v. Hawaii Auto Dealers' Assoc.*, 997 F.2d 581, 586 (9th Cir. 1993).  Any action taken by the Water Court related to property of the estate were void, and thus Dye's services related to the Water Court were gratuitous, unnecessary to enforce the stay or protect the Debtors' water rights, and unreasonable.

Having reviewed the file in its entirety, in conjunction with the applicable law and Dye's Application and billing statements, the Court will award Harper Trust Dye limited attorney's fees

---

[22]Admittedly the results of the cattle sales were relevant to feasibility, but not to Harper Trust's secured status.

22

in the total amount of $40,000 in this case, an amount the Court finds is reasonable, with the caveat that any further request for attorney fees for Dye in this case based on § 506(b) will be closely scrutinized and Harper Trust will have a heavy burden to prove the reasonableness of any further attorney fees to protect its claim.  The Court awards Dye his costs in the amount of $2,116.61 as actual and reasonable.

The $40,000 fee award represents roughly 75 percent (75%) of Dye's fee request.  It takes into account the Trustee Volk's representation of his belief that many of Harper Trust's actions were unnecessary, the fact that Harper Trust's secured status was never threatened and several of its motions, adversary proceeding, and arguments were withdrawn, abandoned or denied, but that it took 8 Plans and 4 contested confirmation hearings before the Debtors satisfied the requirements of § 1225 with respect to the treatment of Harper Trust's claim.  Harper Trust was within its rights to oppose confirmation and the Court finds that the bulk of Dye's fees requested in its Application is reasonable under § 506(b).

## CONCLUSIONS OF LAW

1. This Court has jurisdiction in this Chapter 7 case under 28 U.S.C. § 1334(a).

2. Harper Trust's Application for Professional Fees is a core proceeding under 28 U.S.C. § 157(b)(2).

3. Professionals from different firms seeking compensation for oversecured creditors under 11 U.S.C. § 506(b) and Mont. LBR 2016-1(d) must file separate applications for compensation pursuant to F.R.B.P. 2016 in conformity with Mont. LBF 17.  Harper Trust's failure to file separate Applications for Shirlee Walker and Jack Wicks warrants summary denial of their fees requested as costs in Harper Trust's Application.

4.   The Court concludes that the reasonable amount of attorney fees allowable to Harper Trust for its attorney Harold V. Dye under § 506(b) is $40,000; the Court disallows $13,480 in Dye's fees from Harper Trust's Application as not reasonable, and awards Dye actual, reasonable costs in the amount of $2,116.61.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above sustaining the Debtors' objection in part and overruling it in part; granting in part and denying in part Harper Trust's Application for Oversecured Creditors Attorney Fees and Costs (Docket No. 347) filed on December 7, 2007; awarding Harper Trust's attorney Harold V. Dye reasonable attorney's fees under § 506(b) in the amount of $40,000 plus costs in the amount of $2,116.61; but denying the Application's request for expert witness fees for Jack Wicks and Shirlee Walker as costs based upon failure to comply with Mont. LBR 2016-1(d).

BY THE COURT

*Ralph B Kirscher*

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

24