## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**JEFFERY PAUL WILSON** and
**SHONI LEE CARD**,

Case No.  **05-65161-12**

Debtors.

In re

**WILSON SCOTCH MOUNTAIN ANGUS LLC**,

Case No. **06-60369-12**

Debtor.

## MEMORANDUM OF DECISION

At Butte in said District this 25th day of June, 2009.

In the above-captioned Chapter 12 cases Gary S. Deschenes ("Deschenes") of the law

firm of Deschenes & Sullivan, of Great Falls, Montana, attorney for the above-named Debtors,

filed on March 10, 2009, an "Application for Professional Fees and Costs" ("Application")

(Docket No. 431) requesting an award of attorney's fees in the total amount of $82,145.00 and

reimbursement for costs in the sum of $2,737.61.  Deschenes also filed a Notice of his

Application stating that the parties-in-interest had been served in conformity with Mont. LBR

2002-4.  The Notice informs the parties that they have ten (10) days to file a response and request

a hearing, and that if no response and request for hearing are timely filed, "the Court may grant

the relief requested as a failure to respond by any entity shall be deemed an admission that the

relief requested should be granted." No objections have been filed. The U.S. Trustee has not

filed a response to Deschenes' Application pursuant to 28 U.S.C. § 586(a)(3)(A).

This Court has jurisdiction in this case under 28 U.S.C. § 1334(a). Deschenes'

Application for professional fees and costs is a core proceeding under 28 U.S.C. § 157(b)(2).

Notwithstanding the absence of objection, this Court has an independent obligation to

review each application to evaluate the propriety of the compensation requested. *In re Busy*

*Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 841 (3rd Cir. 1994); *In re Wildman*, 72 B.R. 700, 701

(Bankr. N.D. Ill. 1987). In *Busy Beaver*, the court explained:

> [T]he integrity of the bankruptcy system ... is at stake in the issue of a bankruptcy
> judge's performance of the duty to review fee applications *sua sponte*. The public
> expects, and has a right to expect, that an order of a court is a judge's certification
> that the result is proper and justified under the law.... Nothing better serves to allay
> [public perceptions that high professional fees unduly drive up bankruptcy costs]
> than the recognition that a bankruptcy judge, before a fee application is approved,
> is obliged to [review it carefully] and find it personally acceptable, irrespective of
> the (always welcomed) observation of the [United States trustee] or other
> interested parties.

*Busy Beaver*, 19 F.3d at 841 (*quoting In re Evans*, 153 B.R. 960, 968 (Bankr. E.D.Pa 1993)).

Thus, this Court has an independent obligation to review each application to ensure that

applicants provide an adequate summary of work performed and costs incurred. Extensive case

law has developed regarding the amount and type of information that applicants must include in

their fee applications. The case of *In re WRB-West Associates*, 9 Mont. B.R. 17, 18-20 (Bankr.

D. Mont. 1990) summarizes thus:

> Pursuant to 11 U.S.C. §§ 327-330 and Bankruptcy Rules 2016 and 2017,
> this Court has an independent judicial responsibility to evaluate fees
> requested from the estate. *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 831
> (Bankr. Vt. 1987); *In re Seneca Oil Co.*, 65 B.R. 902 (Bankr. W.D. Okla.
> 1986); *In re Frontier Airlines, Inc.*, 74 B.R. 973 (Bankr. Colo. 1987). The

2

burden of proof to show entitlement to all fees requested from the estate is on the applicant. *In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr. N.D. Ill. 1985). This burden is not to be taken lightly, especially given the fact that every dollar expended on fees results in a dollar less for distribution to creditors of the estate. *In re Yankton College*, 101 B.R. 151, 158 (Bankr. S.D. 1989); *In re Pettibone Corp.*, 74 B.R. 293, 305 (Bankr. N.D. Ill. 1987). All expenses and fees must be shown as both actual and necessary under § [330(a)(3)] of the Code. *S.T.N.*, 70 B.R. at 834; *Yankton College*, 101 B.R. at 158; *Seneca Oil*, 65 B.R. at 912. Moreover, *In re Convent Guardian Corp.*, 103 B.R. 937, 939-940 (Bankr. N.D. Ill. 1989) holds:

> Bankruptcy Rule 2016 provides that "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." (emphasis added) The Application should contain a detailed list of expenses including the date, the type and the amount. Expenses must be actual not estimates. *In re Wildman*, 72 B.R. 700, 731 (Bankr. N.D. Ill. 1987); *In re Marsh*, 14 B.R. 615, 617 (Bankr. E.D. Va. 1981). An expense is necessary if it is incurred because it was reasonably needed to accomplish the proper representation of the client. *Wildman*, 72 B.R. at 731.

The above excerpt demonstrates that this Court is obligated to review each request for fees and costs to determine whether the applicant provided:

1. a description of the services provided, setting forth, at a minimum, the parties involved and the nature and purpose of each task;
2. the date each service was provided;
3. the amount of time spent performing each task; and
4. the amount of fees requested for performing each task.

Attached to Deschenes' Application is a detailed 40-page billing statement which sets forth a description of the services provided beginning 3/14/2006 through 3/9/2009, the dates such services were provided, the amount of time spent, and the fee requested for such services. After review of the billing statement, the Court finds that Deschenes provided adequate detail to enable

3

this Court to undertake its independent investigation.  Based on the history of this case and the

magnitude of Deschenes' fee request, this Memorandum sets forth below the pertinent facts of

this case as shown by the case docket.

**FACTS  &  PROCEDURAL  HISTORY**

Debtors Jeffery Paul Wilson ("Jeffery") and Shoni Lee Card ("Shoni") are married and

live at 25195 Hwy 200 E., Potomac, Missoula County, Montana.  Shoni works as a veterinarian.

Jeffery owns the Debtor Wilson Scotch Mountain Angus, LLC ("Wilson Scotch Mountain"), and

operates a purebred registered Angus cattle operation, and grows hay, on land it purchased from

Harper Trust under a contract for deed.  Jeffery and Shoni live on the land.

The petition in Jeffery's and Shoni's Case No. 05-65161was filed on October 15, 2005[1].

They originally filed the case as a Chapter 13 case, but converted to the case to Chapter 12 on

November 7, 2005.  They filed their first Chapter 12 Plan on March 27, 2006.  Objections to

confirmation were filed by several creditors, and after an agreed delay[2] the preconfirmation

hearing was set for May 11, 2006, then continued to June 1, 2006.  Secured Creditor Paul E.

Harper Revocable Trust ("Harper Trust") filed its first objection to confirmation on April 11,

2006 (Docket No. 52), objecting on several grounds including feasibility, lack of good faith, and

failure to treat Harper Trust's claim at a market interest rate and market term.  From March 20,

2006, through May 16, 2006, Deschenes billed a total of 3.9 hours and $780 in fees for drafting

---

[1]It was originally filed under Chapter 13.  Debtors moved to convert the case to Chapter 12 on October 31, 2005, which was granted.

[2]Docket No. 47 is a stipulation between the parties to delay the preconfirmation hearing. It cites, *inter alia*, Harper Trust's attorney Harold V. Dye's absence from his office on medical leave.

4

the Debtors' first Chapter 12 Plan.

The petition in the Wilson Scotch Mountain Case No. 06-60369-12 was filed on May 24, 2006, with a Chapter 12 Plan.  On the same date Jeffery and Shoni filed their first amended Plan in Case No. 05-65161-12.  Deschenes billed 2.5 hours and $500 for preparing the amended plan on May 23 and 24, 2006, and another .7 hours and $140 on May 30, 2006, for further amending the Plan.

The preconfirmation hearing in Case No. 05-65161-12 was held on June 1, 2006, after which the Court set the hearing on confirmation for August 3, 2006.  Deschenes billed 3.3 hours and $660 for attending hearings on preconfirmation and other matters on June 1, 2006.

On June 9, 2009, Jeffery and Shoni filed their motion to administratively consolidate the two cases.  Harper Trust objected and that matter was set for August 3, 2006.  Deschenes billed a total of 3.1 hours and $620 for conferring with Debtors' expert J.T. Korkow and revising Debtors' Plan from June 20 through July 31, 2006.  Jeffery and Shoni filed a Second Amended Plan on August 2, 2006 (Docket No. 107).  On August 1, 2006, Deschenes billed 2.9 hours and $580 for trial preparation, and on August 2, 2006, billed another 5.0 hours and $1,000 for trial preparation, and 3.0 hours and $600 for travel to Missoula.  Also on August 2, 2006, Deschenes billed a total of another 1.7 hours and $340 conferring and drafting a Second Amended Plan.

At the hearing on August 3, 2006, all parties agreed to continue all pending matters and they were rescheduled for September 21, 2006.  Debtors moved to continue the September 21, 2006, hearing in order to depose the creditors' experts.  Deschenes billed 4.1 hours and $820 on September 14, 2006, reviewing objections and drafting responses and the motion to continue.  On September 18, 2006, Deschenes billed 3.8 hours and $760 preparing for the hearing.  On

5

September 19, 2006, Deschenes billed another 5.5 hours and $1,100 on hearing preparation, and billed another 6 hours and $1,200 in conferences and preparing for hearing on September 20, 2006, plus another 3.0 hours and $600 for travel. On September 21, 2006, Deschenes billed 2 hours and $400 for a conference with the client about the hearing, and 3.5 hours and $750 for the hearing which took place on September 21 and 22, 2006. After that hearing, based on the admission of Debtors' counsel the Court denied confirmation of the Second Amended Plan and entered a scheduling Order (Docket No. 124) resetting the hearing on confirmation for October 31, 2006. Deschenes billed another 1.0 hour for more conferences with Korkow and the client, and 3.0 hours and $600 for travel.

Deschenes billed 1.5 hours and $300 on October 10, 2006, working on the Plan with Korkow, and billed another 2.6 hours and $520 in conferences and drafting the Third Amended Plan on October 11, 2006. Jeffery and Shoni filed their Third Amended Plan on October 11, 2006, to which Harper Trust and other creditors refiled objections to confirmation, and the confirmation hearing was reset for October 31, 2006.

Deschenes billed 3 hours and $600 for travel on October 30, 2006, and billed 3 hours for trial preparation. Harper Trust had moved to dismiss Case No. 06-60369-12, but withdrew that motion at hearing held on October 31, 2006. Confirmation of the Wilson Scotch Mountain Plan originally had been scheduled for August 3, 2006, but the hearing was continued when the Debtor filed an amended Plan in Case No. 06-60369-12 on August 2, 2006, and at the continued hearing on September 22, 2006, the Court ruled the amended Plan was not confirmable.

Harper Trust filed its Proof of Claim in Case No. 06-60369-12 on August 8, 2006, and filed amended claims on October 20, 2006, and again on December 13, 2006, after the Debtor

filed an objection and motion for valuation of Harper Trust's security (Docket No. 76). Harper Trust filed its Proof of Claim No. 9 in 05-65161-12 on January 16, 2006, and filed an amended Claim 9 on August 9, 2006. Jeffery and Shoni filed an objection (Docket No. 155) to Harper Trust's Claim 9 on October 30, 2006, and that objection was set for hearing on December 7, 2006.

The second contested confirmation hearing[3] held on October 31, 2006, included exhibits and testimony of the Debtors, Debtors' expert Korkow, and Harper Trust's experts, after which the Court took confirmation under advisement. Deschenes billed 3.0 hours and $600 for attending the hearing on October 31, 2006, and 3 hours and $600 for travel. After that hearing the cases were consolidated for purposes of joint administration, but not for substantive consolidation, by Orders entered on November 1, 2006, in both cases[4]. On November 16, 2006, Deschenes billed 4.0 hours and $800 drafting Debtors' brief in support of confirmation.

Deschenes billed 3 hours and $600 on December 6, 2006, for travel to Missoula, and billed another 3 hours and $600 for preparation for the hearing the next day. On December 7, 2006, Deschenes billed 1 hour and $200 for the hearing, another 1 hour and $200 in a conference with Dye about the objection to claim, and $600 for return travel.

After the hearing on December 7, 2006, the Court entered an Order in both cases stating that Debtors' motion for valuation of Harper Trust's security and their objection to its claim were resolved by settlement, with respect to which counsel for the parties, Jeffery and Shoni, all stated on the record that they agreed with the valuation of the farm and ranch real property in Missoula

---

[3]Harper Trust's withdrew its motion to dismiss the case and objection to consolidation.

[4]Thereafter Case No. 05-65161-12 was the lead case in which all matters were filed.

County, Montana, securing Harper Trust's claim in the amount of $600,000.

Harper Trust's most recent amended claim in 06-60369-12 asserted a claim in the amount of $526,665.11, including postpetition interest and attorneys fees, secured by the real estate valued at $600,000. The Debtors filed an objection on December 21, 2006, objecting to the prepetition attorneys fees in Harper Trust's claim in the amount of $11,849.27. Harper Trust responded setting that objection for hearing on February 8, 2007.

On February 7, 2007, the Court entered a Memorandum of Decision and Order (Docket Nos. 205 & 206) sustaining Harper Trust's objections in part[5] and denying confirmation of Debtors' Plans. The Court denied Harper Trust's motion to dismiss, granted Debtors 20 days to file a further amended Plan and reset the confirmation hearing on March 30, 2007. The Memorandum concluded that Debtors failed to satisfy their burden of proving that their Plans were feasible as required by 11 U.S.C. § 1225(a)(6), but that the issue of feasibility was premature because of Debtors' failure to satisfy their burden under § 1225(a)(5)(B)(ii) to establish an appropriate cramdown interest rate for Harper Trust's secured claim[6].

Deschenes billed a total of 1.7 hours and $340 conferring and drafting Debtors' Fourth Amended Plan, which Debtors filed on February 27, 2007. After Valley Bank filed an objection, Deschenes billed 2.5 hours and $500 on March 26, 2007, on further amendments to the Plan. Deschenes billed a total of 7.3 hours and $1,460 for amending the Plan and filed the Fifth

---

[5]The Court concluded Debtors satisfied the income requirement for family farmers under 11 U.S.C. § 101(a)(18) and so were eligible for Chapter 12 relief under 11 U.S.C. § 109(f).

[6]Debtors' proposed cramdown interest rate was 1.25% below the prime rate, rather than prime plus an appropriate risk factor required under longstanding case law. *Till v. SCS Credit Corp.*, 541 U.S. 465, 478-80, 124 S.Ct. 1951, 1961, 158 L.Ed.2d 787 (2004); *In re Fowler*, 903 F.2d 694, 698-99 (9th Cir. 1990).

Amended Plan on March 27, 2007.  Harper Trust filed further objections to confirmation, including but not limited to its earlier objections based on feasibility and the proposed cramdown interest rate.  The Fifth Amended Plan provided for the sale of 20 acres and payment to Harper Trust of $150,000.

On March 13, 2007, the Court entered a Memorandum and Order on Debtors' objection to Harper Trust's amended claim (Docket Nos. 226 & 227).  The Court sustained Debtors' objections in part and overruled them in part, and allowed Harper Trust prepetition attorney fees for Dye in the amount of $10,635 and costs of $366.77[7] for a total of $11,001.77 as part of Harper Trust's allowed claim.  The Court disallowed $847.50 of Harper Trust's claim for duplicative time and time billed on the petition date.

On March 29, 2007, Debtors filed a motion to continue the confirmation hearing due to weather conditions and the proposed sale of 20 acres of their property.  Deschenes billed a total of 1.9 hours and $380 on March 29, 2009, conferring and working on the motion to continue.  The Court granted the motion and continued the confirmation hearing and other hearings to May 10, 2007.  Deschenes billed .2 hours and $40 on May 1, 2007, discussing the Plan with the client.

On May 9, 2007, Deschenes billed 3 hours and $600 for travel, and 3 hours and $600 for hearing preparation.  Debtors reached settlements with Valley Bank of Hot Springs and Valley Bank of Arlee on their claims on May 9, 2007, prior to the May 10, 2007, hearing[8].  Debtors and their expert testified at the May 10, 2007, hearing, as did Paul Harper and Walker.  Deschenes billed 6 hours and $1,200 for the May 10 confirmation hearing and another 3 hours and $600 for

---

[7]The costs were reduced from $451.77.

[8]The stipulations with Valley Bank were updated on August 9, 2007.

travel.  After the May 10, 2007, hearing the Court granted the parties time to file their briefs on confirmation and took the matter under advisement.  Deschenes billed .2 hours and $40 on May 31, 2007, drafting Debtors' brief.

Debtors employed a realtor to market and sell 20 acres of their property on May 7, 2007. On July 5, 2007, Debtors filed a motion to sell the 20 acres and a motion for expedited hearing. Harper Trust filed an objection and a motion for adequate protection, and those matters were set for hearing on July 12, 2007.  Deschenes billed 4.3 hours and $860 in fees for the July 12, 2007, hearing, and billed $20 for a phone call with Korkow about amending the Plan.

The Court overruled Harper Trust's objections to the sale at the July 12, 2007, hearing and entered an Order, Docket No. 289, granting Debtors' motion to approve the sale of 20 acres for $275,000 free and clear of liens, with valid liens to attach to the proceeds.  The Court urged Debtors and Harper Trust "to seek alternatives to future litigation in light of this change in circumstances."  Both Dye and Deschenes billed time for services involving settlement negotiations, but no settlement was reached.

Deschenes billed $40 for .2 hours on July 19, 2007, for a phone call with Korkow about the Plan, and billed another $140 for .7 hours on July 20 regarding the Plan.  On July 26, 2007, Deschenes billed 3.5 hours and $700 drafting the Sixth Amended Plan and $40 for a phone call with Dye about the Plan.  Debtors filed their Sixth Amended Plan on July 26, 2007.  On July 27, 2007, based on that filing the Court denied confirmation of the Fifth Amended Plan as moot and set the hearing on confirmation of Debtors' Sixth Amended Plan for confirmation hearing in August 2007, along with Harper Trust's motion for adequate protection.  Harper Trust filed another objection to confirmation.  Deschenes billed $200 for 1 hour of hearing preparation on

10

August 16, 2007, and 5.0 hours and $1,000 for attending the hearing on August 30, 2007.  Dye and Deschenes appeared, and the Court considered the testimony from all prior confirmation hearings as part of the record.  The Chapter 12 Trustee James D. Volk appeared in support of confirmation.  Objections of other creditors were resolved by stipulation.

After the August 30, 2007, hearing the Court entered an Order, Docket No. 316.  The Court granted Harper Trust and Debtors time to file additional briefs on confirmation and Harper Trust's motion for adequate protection, and the Court ordered $175,000 in proceeds from the sale of the 20 acres of Debtors' property paid to Harper Trust as a partial distribution.  Deschenes filed his brief on September 13, 2007.  His billing statements include 4.7 hours and $940 in fees on September 12, 2007, drafting his brief, and another 1.4 total hours and $280 on September 13, 2007, revising his brief.

The Court entered its Memorandum of Decision on confirmation on November 7, 2007, with a separate Order, overruling Harper Trust's objections to confirmation (Docket Nos. 329 & 330).  The Court directed Debtors to file a Final Amended Plan to make needed corrections, incorporate stipulations, adjust Harper Trust's allowed claim to reflect the $175,000 partial distribution, and to allow adequate time for the Debtors to make plan payments on time.  The Court overruled Harper Trust's objections based on the requirement of § 1225(a)(5)(B)(i) that it retain its lien, based on Debtors' proposed use of the sale proceeds which are cash collateral, and rejected its contention that it was not adequately protected by an equity cushion after the sale of 20 acres. The Court noted at page 33 and of its Memorandum that "the $175,000 partial distribution made a dramatic improvement on Harper Trust's debt to security ratio."  At page 34 the Court found that "at least $555,000 in value remains to secure Harper Trust's lien."

11

At the time of the final confirmation hearing Harper Trust had not yet filed its Application for professional fees under § 506(b).  As a result, the Court at pages 35 and 36 calculated Harper Trust's allowed claim after the $175,000 partial distribution to be in the amount of $383,757.11 secured by property worth at least $555,000.

The Court next concluded at pages 37 and 38 that the Sixth Amended Plan's increased cramdown interest rate of 8.5% satisfied the formula approach of *Fowler* and *Till*.  Harper Trust objected but offered no evidence at the hearing that controverted the expert testimony offered by the Debtors with respect to either the interest rate or the term.  The Court overruled Harper Trust's objection to Debtors' use of cash collateral, following longstanding case law under 11 U.S.C. § 1205(b)(1) and 11 U.S.C. § 363(e) which allowed use of cash collateral proposed by a plan which adequately protects the interest of the creditor in the collateral.  Memorandum, at pp. 42-45.

On the issue of feasibility, the Court concluded at page 48 that, with the sale and partial distribution of $175,000[9] to Harper Trust, and the Debtors' expertise in animal science and Trustee's enthusiastic support, Debtors satisfied their burden of proving that their Plan is feasible under § 1225(a)(6).  The Court deemed Harper Trust's other objections, based on negative amortization and lack of good faith, abandoned since they were not addressed in its brief.

In accordance with the Court's Order the Debtors filed a Seventh Amended Plan on November 19, 2007 (Docket No. 333).  Deschenes billed .8 hours and $160 in fees on November

---

[9]Without the sale and partial distribution the Court likely would have concluded the Plan was not feasible.  Memorandum, p. 48.

12

19, 2007, for two phone conference with Korkow regarding the Plan[10].  Also on November 19,

2007, at page 34 of the billing statement, are more entries totaling 4.9 hours and $980 in fees

conferring with Korkow and drafting the Seventh Amended Plan.

The Seventh Amended Plan treated Harper Trust's claim as secured by property with a

value of $575,000, payable in payments of $36,675.00 over 30 years at 8.5%, with a 5 year

balloon payment due on the last day of 2012.  On November 20, 2009, the Court entered an

Order confirming Debtors' Seventh Amended Plan and an Order for the Clerk to remit all

remaining sale proceeds to the Debtors for disposition in accordance with the confirmed Plan.

Harper Trust filed a notice of appeal of the Order confirming Debtors' Plan.  Debtors filed a

cross appeal of the order overruling their objections to Harper Trust's prepetition attorney fees.

Harper Trust's attorney Dye filed an Application (Docket No. 347) on December 7, 2007,

requesting postpetition fees for himself and other professionals of his firm under 11 U.S.C. §

506(b).  Other secured creditors filed their applications for fees.  The Debtors filed objections to

several the fee applications, and set them for hearing on February 7, 2008.  By Order entered on

February 5, 2008, the Court vacated the hearings and held the contested fee applications[11] in

---

[10]The Court notes duplicative yet slightly different entries for Deschenes' phone calls
with Korkow on November 19, 1007.  The first, at the bottom of page 27 of the billing statement
states .7 hours and $140 on 11/19/07, but at the top of page 34 another entry dated 11/19/07 is for
.8 hours and $160.  Deschenes' billing statement contains several pages of duplicable entries
beginning on page 21 with an entry dated 4/3/2007 which ends on page 27 with an entry dated
11/19/07.  Then the billing statement on page 28 begins with an entry on 4/3/2007 which is the
same as the entry with the same date on page 21, and then similar if not identical entries continue
to the top of page 34.  Of course, the Court will not award Deschenes double compensation for
the same services which he listed twice in his billing statements.

[11]Unopposed applications for compensation of professionals, except for that filed by
Deschenes, were taken up and decided.

13

abeyance until the conclusion of the appeal.

On December 27 and 28, 2007, Deschenes billed a total of approximately 2.3 hours and $460 on Debtors' cross appeal. Deschenes billed a total additional .6 hours and $135 on January 2, 2008; .7 hours and $157.50 on January 4, 2008; and a total of .8 hours and $180 on January 11 and 17, 2008, all on Debtors' cross appeal. On April 14 and 15, 2008, Deschenes billed a total of 2.9 hours and $652.50[12] on Debtors' appellate brief, without describing how much of the time related to Debtors' cross appeal versus Harper Trust's appeal.

On September 5, 2008, Debtors filed an application to employ a real estate agent to sell their real estate. On the same date Harper Trust filed another motion to dismiss, alleging breach of Debtors' confirmed Plan by listing additional property for sale. The application to employ realtor was set for hearing on September 19, 2008, and was approved at the hearing at which Dye appeared but called no witnesses and offered no exhibit or other evidence in opposition to the application.

Harper Trust's motion to dismiss was set for hearing on October 9, 2008. Deschenes appeared by video. Dye appeared at the hearing representing Harper Trust but offered no testimony or exhibits in support of its motion, but Dye offered attorney argument of gross mismanagement or fraud by Debtors. The Court denied that motion to dismiss by Order entered on October 9, 2008. Deschenes billed an additional 1.0 hour and $225 in fees on October 22, 2008, preparing further amendments and motion to modify the confirmed Plan, but no motion to modify was filed

On February 5, 2009, an order from the district court was docketed in this case affirming

---

[12]Deschenes raised his hourly billing rate to $225 at the beginning of 2008.

14

this Court's Order confirming Debtors' Plan. With respect to Debtors' cross appeal on Harper Trust's interim attorney fees, the district court's order states at the bottom of page 10 that Debtors' withdrew their cross appeal, so the court did not address it.

Dye's Application for compensation was set for hearing with the other contested applications at Missoula on March 12, 2009. The Debtors reached stipulations resolving the applications for compensation filed by Valley Bank and Ag Sales, which were approved. The Court took Dye's Application under advisement. By Memorandum of Decision (Docket No. 439) and Order (Docket No. 440) entered on June 22, 2009, the Court sustained the Debtors' objections to Dye's Application in part and overruled it in part. The Court noted in footnote 21 at page 21 of Docket No. 439 that it believes there was overlawyering in both sides.

At the hearing on Dye's Application Deschenes testified that Harper Trust's Application for fees and costs were not reasonable. Dye and Deschenes both are experienced bankruptcy attorneys in this district. Deschenes testified that he has never appeared in a case which was fought this long and this hard, and that Harper Trust fought and dragged out everything trying to get the property back. He testified that the Debtors filed six or seven Plans, but admitted that the record speaks for itself[13].

## DISCUSSION

Deschenes seeks an award of attorney fees for these cases in the total amount of $82,145.00 plus costs in the amount of $2,737.61. By comparison, this Court's Local Bankruptcy Rule ("Mont. LBR") 2016-1(b) provides for a "Presumed Reasonable Fee" in

---

[13]Debtors' Seventh Amended Plan makes a total of eight (8) Plans files in Case No. 05-65161-12.

15

Chapter 12 cases if a debtor's plan is confirmed in the amount of $4,500.  LBR 2016-1(b)

concludes:  "If attorney fees exceed the allowed amounts noted above, the professional must file

an application pursuant to this rule, and submit evidence that the entire amount of fees requested

are reasonable and necessary for the proper representation of the debtor."

Deschenes incurred $82,145.00 in attorney fees in this case even though Harper Trust was

at all times in this case oversecured.  While Debtors' objected to Harper Trust's claim, they

objected only to the attorney fee portion, and not to the validity of Harper Trust's lien.  Harper

Trust was never required to engage counsel to defend its secured status, but it was required to

engage counsel to ensure that the Debtors satisfied the confirmation requirements regarding

treatment of Harper Trust's claim under § 1225(a)(5)(B).

In Docket No. 439 the Court agreed with the Trustee that many of Dye's services on

behalf of Harper Trust were unnecessary because so many of the filings resulting from Dye's

services were simply withdrawn or abandoned.  On the other hand, the Court disagreed with

Deschenes' contention that none of Dye's services were reasonable.

In Case No. 05-65161-12 the Debtors filed eight[14] Chapter 12 Plans before the Plan was

in a condition that it could be confirmed.  For that the Debtors must accept sole responsibility

because they had the burden of satisfying the confirmation requirements of § 1225.  Because of

the Debtors, no fewer than four full blown contested confirmation hearings were held in this case

on September 21 and 22, 2006, October 31, 2006, May 10, 2007, and August 30, 2007, each of

which involved significant hours of preparation for hearing, travel, and trial time for which

Deschenes seeks fees and costs.

---

[14]This number of plans in a Chapter 12 is rare, if not nonexistent, in this District.

16

The Court notes what the Ninth Circuit Bankruptcy Appellate Panel  wrote: "[T]he applicant must demonstrate only that the services were 'reasonably likely' to benefit the estate at the time the services were rendered." *Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Company, (In re Mednet)*, 251 B.R. 103, 108 (9th Cir. BAP 2000).  At earlier confirmation hearings Deschenes appeared and admitted that the Debtors' Plans could not be confirmed.

Through August 2, 2006, Deschenes' billing statement shows that he incurred a total of $2,920 in fees for drafting Plans, and another $2,240 in fees in preparation for hearings and hearing time.  For the hearing on September 21 and 22, 2006, where Deschenes appeared and agreed that the Second Amended Plan was not confirmable, he billed a total of $3,660 for hearing preparation, $1,200 for travel, and $1,300 for hearing time.

Confirmation of Debtors' Third Amended Plan was denied after a contested hearing because Debtors proposed a cramdown interest rate which was 1.25% below the prime rate, in violation of the longstanding formula approach required under *Fowler* and *Till*, but without providing any support other than Korkow's unsupported testimony.  For the hearing on the Third Amended Plan Deschenes billed $820 drafting the Plan, $1,200 for travel, $1,200 for trial preparation and the hearing and $800 for the post-trial brief.

Deschenes billed $340 to draft the Fourth Amended Plan, and after objection billed $1,460 to draft the Fifth Amended Plan.  After the contested hearing on confirmation of Debtors' Fifth Amended Plan on May 10, 2007, Debtors rendered that Plan moot by filing a Sixth Amended Plan necessitating another full blown hearing on August 30, 2007.  Deschenes billed $1,200 for travel to the hearing on the Fifth Amended Plan, billed $600 on hearing preparation and billed $1,200 for the hearing.

17

Deschenes billed $1,120 in fees in the course of drafting the Sixth Amended Plan, another $80 in fees preparing for the August 30, 2007, contested hearing, $1,000 in fees for hearing time and $940 in fees for the post-hearing brief.  After the Court overruled Harper Trust's objections, Deschenes billed a total of $1,260 to draft the Seventh Amended Plan which was confirmed.  For the above services, the Court calculates that Deschenes billed a total of $11,580 for conferring and drafting plans, a total of $3,600 for travel, a total of $6,940 for trial preparation and hearing time, and a total of $1,740 in preparing post-hearing briefs.

Despite all of this time spent by Deschenes, the case was decided in large part on the cramdown rate of interest.  The Court took judicial notice of the prime rate of interest (Docket Nos. 92; 329, p. 37 n.32).  Despite the hours of expert testimony, Harper Trust offered no expert testimony with respect to the interest rate or risk factor at any of the hearings.  The Court denied confirmation after the October 31, 2006, confirmation hearing based on the longstanding rule of *Fowler* and *Till* applying a formula for the cramdown rate, because Debtors' proposed cramdown interest rate was 1.25% below the prime rate, rather than the prime rate plus a risk factor.

A person who has consulted with an attorney "can be charged with constructive knowledge of the law's requirements." *Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044, 1050 (9th Cir.1987).  Deschenes is an experienced Chapter 12 practitioner, and was charged with knowledge of the formula approach for cramdown under *Fowler* and *Till*.  There was no suggestion leading up to the October 31, 2006, confirmation hearing that any change had been made to the longstanding formula approach required under *Fowler* and *Till*.  This Court finds that it is not reasonable for Deschenes to incur several thousand dollars in attorney fees, and cause other creditors to incur attorney fees and the Court to waste scarce judicial resources, going

18

forward with a contested confirmation hearing on a plan which is not confirmable on its face because of failure to satisfy longstanding confirmation requirements.  This conduct happened for at least three full blown contested confirmation hearings.  The Court concludes that not all of Deschenes' services were reasonable.

A bankruptcy court may award reasonable compensation to a debtor's attorney in a chapter 12 or chapter 13 case "for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and other factors set forth in this section."  11 U.S.C. § 330(a)(4)(B); *Boone v. Derham-Burk (In re Eliapo)*, 468 F.3d 592, 597 (9th Cir. 2006).  Section 330(a)(3) lists factors to be considered in determining whether to allow fees:

> (3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

§ 330(a)(3).  The court may *sua sponte* award compensation that is less than the requested amount.  11 U.S.C. § 330(a)(2); *Eliapo*, 468 F.3d at 597.

19

The Court has considered the above factors and the record in this case.  Deschenes is experienced in Chapter 12.  Many of his services were necessitated by Harper Trust's active and aggressive litigation tactics, and for that he will be awarded substantial fees.  He testified that this was the most contentious bankruptcy case he has ever been involved in, and the Court agrees. Deschenes' fee request of $82,145 is among the highest in memory for a Chapter 12 in this District, and is more than eighteen times the presumed reasonable fee for a Chapter 12 provided at Mont. LBR 2016-1(b).  Much of the contentiousness and much of the expense in this case is due, in the Court's view, with the Debtors' failure to submit a Plan which could be confirmed.

The Court concludes that it is not reasonable or necessary for a debtor to submit 8 plans before satisfying the requirements of § 1225(a)(5).  The law under *Till* and *Fowler* is well settled. Deschenes requests a total of $11,580 in fees for drafting 8 plans.  The Court will award Deschenes a reasonable fee in the amount of $5,000 total for conferring and drafting Debtors' Chapter 12 Plans, and disallows $6,580 in attorney fees for preparing plans as excessive and unreasonable.  The Court acknowledges the hardship of disallowing fees of this magnitude, but deems it necessary to ensure that practitioners understand that they will not be awarded fees while delaying a case by not submitting a plan which satisfies the requirements for confirmation.

In the same vein the Court allows Deschenes $2,400 in fees for travel but disallows $1,200 in travel time for the third round trip from Great Falls to Missoula.  Unless shown necessary for circumstances which do not appear in the instant case, the Court deems two contested hearings sufficient in a Chapter 12 case.  The Court notes that Deschenes appeared by

20

video at some contested hearings[15].  Of the $6,940 in fees for trial preparation and contested confirmation hearings, the Court allows Deschenes $3,000 in fees as a reasonable amount and disallows $3,940 as unreasonable and unnecessary given the condition of Debtors' earlier Plans. The Court awards Deschenes $1,000 in reasonable fees for preparing post-hearing briefs on confirmation, and disallows $740.

Deschenes requests fees for opposing Harper Trust's appeal and for Debtors' cross appeal.  The Court noted above Deschenes' entries related to Debtors' cross appeal totaling $932.50.  As the appellate court noted, Debtors withdrew their cross appeal.  The Court therefore disallows $932.50 in Deschenes' fees for the cross appeal as not reasonable or necessary.  The Court allows Deschenes half of the $652.50 in fees for preparing Debtors' appellate brief, and disallows half or $326.25 because Deschenes failed to allocate those billing entries on April 14, and, 15, 2008, between Debtors' cross appeal and their opposition to Harper Trust's appeal.

The total amount of Deschenes' attorney fees disallowed above for preparing Plans, travel, trial and trial preparation, briefing, and cross appeal is $13,718.75.  After review of the factors listed in § 330(a)(3) and *Eliapo,* the Court finds that the remainder of Deschenes' fee request, in the sum of $68,426.45, is reasonable and necessary.  This represents 84% of Deschenes total request for fees.  It takes into account Trustee Volk's representation of his belief: that many of Harper Trust's actions were unnecessary but required opposition by Deschenes; and that Harper Trust's secured status was never threatened but it filed several  motions, adversary proceeding, and arguments, which were withdrawn, abandoned or denied.  Nevertheless, it took 8

---

[15]The Court agrees that circumstances sometimes require in-person attendance, such as when preparing a client to testify.

21

Plans and 4 contested confirmation hearings before the Debtors satisfied the confirmation requirements of § 1225(a).

Deschenes requests reimbursement of costs in the amount of $2,737.61, including $835.50 for copies at $.15 per page. Deschenes explains that he cannot determine his actual cost for copies, and that he charged $.15 as the rate at which the Court ordinarily awards copy costs. However, pursuant to Mont. LBR 2016-1(c) this Court presumes as reasonable and awards $.10 per page as a reasonable photocopy cost. Because Deschenes failed to show his actual copy cost is $.15 per page, the Court allows $557.00 in copy costs at $.10 per page and disallows $278.50 for failure of proof. The Court finds the remainder of costs requested are actual, reasonable and necessary.

Deschenes' services resulted in the entry of an Order confirming the Debtors' Chapter 12 Plan. Based upon the results obtained by Deschenes in this case and after review of the Application, billing statements and the record, and in the absence of any objection after notice, the Court finds that the services and costs provided by Deschenes for which he requests an award of professional fees and costs, except for the $13,718.75 in fees and $278.50 in costs disallowed above, were actual, reasonable and necessary for the estate.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction in this Chapter 7 case under 28 U.S.C. § 1334(a).

2. Debtors' attorney Gary S. Deschenes' Application for Professional Fees and Costs is a core proceeding under 28 U.S.C. § 157(b)(2).

3. The Court concludes that the reasonable amount of attorney fees allowable to Debtors' attorney Gary S. Deschenes under § 330(a)(3) and Mont. LBR 2016-1(b) is $68,426.45; the

22

Court disallows $13,718.75 in Deschenes' fees and $278.50 in costs from Debtors' Application as not reasonable, and awards Deschenes actual, reasonable costs in the amount of $2,459.11.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above granting in part and denying in part Debtors' Application for Professional Fees and Costs (Docket No. 431) filed on March 10, 2009, and awarding Gary S. Deschenes reasonable professional fees in the amount of $68,426.45 and reimbursement for costs in the amount of $2,459.11; and Deschenes is authorized to apply the $71,303.96 received from the Debtors against this award as an administrative expense.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

23